**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND, and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, CATHERINE WENSKUS, not individually but as Administrator of the Funds,** | ) | |
| **and,** | ) | |
| **v.** | ) | |
| **DINATALE CONSTRUCTION INC., an Illinois corporation, NINETTA INC., an Illinois corporation, AMATORE DINATALE, individually, and CARMELA MARSICO, individually,** | ) | **Judge** |
| | ) | **Case No.** |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (collectively the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine Mosenson, and Sara S. Schumann, for their Complaint against Defendants DiNatale Construction Inc., Ninetta Inc., Amatore DiNatale, and Carmela Marsico, state:

## JURISDICTION & VENUE

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law, and 805 ILCS 5/1 et seq.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

## THE PARTIES

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). Since March 14, 2008, the Union and Company are parties to a collective bargaining

agreement the most recent of which became effective June 1, 2017 ("Agreement"). (A copy of the most recent Agreement which also binds Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

6. Defendant Dinatale Construction, Inc. ("Company") is an Illinois corporation, (hereinafter "Company"), conducts business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7. Defendant Amatore Dinatale ("Dinatale") is and was at all relevant times an officer, shareholder and managing employee of Dinatale.

8. Defendant Ninetta, Inc. ("NINETTA") is an Illinois corporation incorporated on September 12, 2008. NINETTA does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

9. Defendant Carmela Marsico ("Marsico") is and was at all relevant times an officer, shareholder of NINETTA. Marsico is the sister of Dinatale and was simultaneously employed by the Company and NINETTA. During this time, the Company reported Marsico to the Funds as a "laborer" and paid fringe benefit contributions on her behalf.

10. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors'

Industry Advancement Fund (the “Wall & Ceiling Fund”), the CISCO Uniform Drug/Alcohol Abuse Program (“CISCO”), the Laborers’ District Council Labor Management Committee Cooperative (“LDCLMCC”), the Will Grundy Industry Trust Advancement Fund (“WGITA”), the Illinois Environmental Contractors Association Industry Education Fund (“IECA Fund”), the Illinois Small Pavers Association Fund (“ISPA”), and the Chicago Area Independent Construction Association (“CAICA”) to act as an agent in the collection of contributions due to those Funds.

**COUNT I**

**(Failure to Submit to an Audit to Determine Employee Benefit Contributions)**

11. The Funds re-allege paragraphs 1 through 10 above as though fully set forth herein.

12. The Agreement and the Funds’ respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds’ respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

13. The Agreement and the Funds’ respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

14. The Agreement obligates the Company to obtain and maintain a surety bond to

insure future wages, pension and welfare contributions.

15. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Funds have demanded an audit of the Company's books and for the time period of March 14, 2008 forward to determine to what extent the Company deprived the Funds of information needed to administer the Funds and jeopardized the benefits of the participants and beneficiaries.

16. During the requested audit period, the Company had knowledge that individuals performing work defined as covered under the terms of the collective bargaining agreement between the Company and the District Council were not being paid the appropriate wages and were not having the appropriate benefit contributions reported and submitted on their behalf by the Company to the Funds.

17. Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit.

18. Company's actions in failing to submit to an audit to determine benefit contribution compliance violates Section 515 of ERISA, 29 U.S.C. §1145.

19. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Dinatale Construction, Inc.:

a. ordering Defendant Dinatale Construction, Inc. to submit its books and records to an audit for the time period of March 14, 2008 forward to determine benefit contribution compliance;

b. retaining jurisdiction to enter judgment in sum certain on the amounts revealed as owing on the audit, if any, including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT II**

**(Failure to Submit to an Audit to Determine Dues Contributions Compliance)**

20. Plaintiffs re-allege paragraphs 1 through 19 of the Complaint as though fully set forth herein.

21. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

22. Notwithstanding the obligations imposed by the Agreement, the Company failed to submit its books and records to an audit to determine dues contributions compliance for the time period of March 14, 2008 forward, thereby depriving the Union of information.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Dinatale Construction, Inc.:

a. ordering Defendant Dinatale Construction, Inc. to submit its books and records to an audit for the time period of March 14, 2008 forward to determine dues contributions

compliance;

b. retaining jurisdiction to enter judgment in sum certain on the amounts revealed as owing on the audit, if any, including contributions, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT III**

**(Alter Ego Liability and/or Single Employer Liability – Ninetta, Inc.)**

23. Plaintiffs re-allege paragraphs 1 through 23 of the Complaint as though fully set forth herein.

24. NINETTA was incorporated on September 12, 2008 and served as a vehicle through which the Company could avoid its collective bargaining agreement obligations during the audit period. NINETTA did not independently execute a collective bargaining agreement with the Union.

25. During the period September 12, 2008, forward the Company attempted to avoid its obligations under the Agreement and Declarations of Trust by shifting laborers work covered under the Agreement to NINETTA. This work included but is not limited to grading and compacting gravel, framing, pouring concrete for driveways, aprons, sidewalks, and curbs and dismantling forms.

26. This shifting of work involved: (1) paying Company laborer employees through NINNETA which effectively allowed the Company to conceal its actual laborer payroll hours from the Funds and/or (2) involved subcontracting the Company's laborers work to NINETTA

which was performed by Company employees who were in turn paid through NINETTA. Under this scheme, neither the Company nor NINETTA made fringe benefit and union dues contributions for this work. The Company's laborer employees received a paycheck from NINETTA and were paid below the union wage rate as provided by the Agreement. By shifting this work to NINETTA, the Company was able to perform laborers work without incurring the union wage and fringe benefit obligations.

27. There is an interrelation of operations and centralized control of labor relations between the Company and NINETTA and both share substantially identical management, business purposes, operations and supervision. Dinatale directs, controls and manipulates the activities of the Company and NINETTA including: a) manages the day to day field operations; b) hiring, firing and layoffs; c) supervision of the employees; and d) managing and shifting manpower between the Company and NINETTA.

28. There is common ownership between the Company and NINETTA via Dintale's financial control over NINETTA. Dinatale controls the size of the projects on which it works, and overhead expended by NINETTA on the projects including hours worked by its employees and hours of work actually paid to its employees.

29. While being paid through NINETTA, the employees reported to and took direction from Dinatale and the Company's foreman (not NINETTA's) and the employees hours were tracked by the Company's foreman and reported to Dinatale.

30. The Company and NINETTA performed similar work in they both provide concrete construction including but not limited to grading and compacting gravel, framing, pouring concrete for driveways, aprons, sidewalks, and curbs and erecting and dismantling of forms. All of this work is laborers work covered the Agreement and Declarations of Trust.

31. While working being paid through NINETTA, the Company's employees reported to either the Company's yard located in Addison, Illinois or to the Company's projects and utilized the Company's equipment and trucks.

32. The Company and NINETTA have the same registered agent, maintain and identical line of business and customers and upon information and belief, the Company and NINETTA utilize the same payroll service, Intuit Payroll. Furthermore, both companies perform work in the same trade and geographical jurisdiction of the Plaintiffs' Union.

33. NINETTA's activities and business operations are conducted in a complimentary method to further the Company’s business activities and both companies are a single integrated enterprise and alter egos of one another.

34. As an alter ego to and/or single employer with the Company, NINETTA is bound to the terms of the Agreement and the Funds’ respective Trust Agreements and required to submit its books and records for an audit covering the period March 14, 2008 forward. ("Audit Period")

35. As an alter ego and/or single employer with the Company, NINETTA is liable for the Company’s debts to the Funds as well as its own liability to the Funds as a result of performing work covered by the Agreement during the Audit Period and not paying corresponding fringe benefit and union dues contributions.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment against Defendant NINETTA, Inc., as follows:

(a) Finding that NINETTA, Inc. is an alter ego of and/or single employer with Dinatale Construction, Inc.;

(b) Finding that NINETTA, Inc. is jointly and severally liable to the Funds for the

delinquent contributions, dues, interest, liquidated damages and attorneys' fees and court costs owed by Dinatale Construction, Inc. as set forth in Counts I and II;

(c) Ordering NINETTA, Inc. to submit their books and records to an audit for the time period of March 14, 2008 forward;

(d) Enter judgment in sum certain against NINETTA, Inc. and Dinatale Construction, Inc., jointly and severally, on amounts due and owing on the NINETTA, Inc. fringe benefit and dues compliance audit including liquidated damages, interest, audit costs, attorney fees and costs for the period March 14, 2008 forward;

(e) Granting all such other legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**(Fraud - Amatore Dinatale)**

36. Plaintiffs Funds re-allege paragraphs 1 through 35 of the Complaint as though fully set forth herein.

37. The Court has supplemental jurisdiction over this cause of action pursuant to 28 U.S.C. §1367(a).

38. Dinatale, as Officer and Shareholder of the Company, had the ability to control and direct the employment and reporting obligations of individuals performing work defined as covered under the terms of the Agreements between the Company and the Union.

39. At times relevant herein, Dinatale had knowledge that individuals performing work defined as covered under the terms of the Agreement between the Company and the Union were not being paid the appropriate wages and were not having the appropriate benefit contributions reported and submitted on their behalf by the Company to the Funds.

40. To avoid paying overtime wages and fringe benefit contributions, Dinatale funneled the Company's payroll through NINETTA which Dinatale used as a vehicle for the Company to avoid its obligations under the Agreement during the Audit Period.

41. The Company, under the direction and control of Dinatale, failed to properly record and pay wages and benefits on hours worked by employees performing laborers work during the relevant time period including, but not limited to Pedro Roman.

42. Dinatale intentionally shifted laborers work and funneled Company payroll through NINETTA with the intent to avoid paying the appropriate wages and benefit contributions required under the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust.

43. Signatory contractors are required to submit monthly benefit contribution reports on the tenth day of the month following the month in which covered work was performed identifying the numbers of hours worked by individuals who perform covered work under the terms of the Agreements. Benefit reports submitted to the Funds provide in relevant part:

> **EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing the Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

44. The dues report forms also contain a warranty clause which provides:

> **EMPLOYER'S WARRANTY AND ACCEPTANCE:** By the submission of this report, Employer expressly warrants and affirms that this report accurately states all hours worked by the Employer's laborer employees. By signing this report, the Employer hereby accepts, adopts and agrees to be bound by the terms and conditions of the Independent Construction Industry Collective Bargaining Agreement with the Construction and General Laborers' District council of Chicago and Vicinity (the "Union") and any extension, renewal, modification or amendment of that Agreement.

45. By funneling the Company's laborers work payroll through NINETTA and not reporting and paying the corresponding fringe benefit and dues contributions on those hours, Dinatale knowingly submitted or caused to be submitted false benefit and corresponding dues reports on behalf of the Company.

46. The Funds relied to their detriment on the false reports submitted by Dinatale. Specifically, if the Funds had been aware that the Company had failed to pay and report the proper wages, dues and benefit contributions for work performed on the Company's projects, the Funds, through the Union, would have taken all lawful steps permitted under the Agreements including, but not limited to, taking job actions against the Company and filing the appropriate lawsuit. Further, if the Funds had been aware of the underpayment of wages, dues and benefit contributions, the Funds would have been precluded from crediting hours for the incomplete reports submitted by the Company at the direction of the Dinatale and would have commenced the appropriate lawsuit at an earlier date. Thus, by submitting or causing to be submitted false reports, Dinatale enabled the Company to continue to operate resulting in a benefit to Dinatale and increased the liabilities owed by the Company and NINETTA to the Funds.

47. The Funds and the plan participants have suffered harm as a direct result of the false benefit and dues reports submitted on behalf of the Company by Dinatale. Specifically, the Funds have incurred unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and attorneys' fees and expenses. The Funds have also provided benefit coverage to individuals based on the submission of the incomplete and false reports. Said coverage would not have been provided had the Funds been aware that the reports were false and incomplete. As a result of the systematic under-reporting, individuals may have received eligibility based on less hours than actually worked, future welfare contribution rates may be impacted, the Pension Fund may be

required to provide benefits to participants for which no contributions have been received, and in the event that the Funds are unable to obtain full recovery of all amounts due from the Company and NINETTA, the Funds may become under-funded.

48. Dinatale personally benefited from the submission of false reports submitted by the Company to the Funds enabling the Company to continue operations and obtain financial gain including the payment of wages and/or bonuses and/or dividends to Dinatale as a result of the continued operation of the Company. Thus, Dinatale obtained a direct financial gain as a result of the submission of false benefit and dues reports to the Funds.

49. Dinatale is personally liable for any unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and wages owed by the Company and NINETTA to the Funds and should be found jointly and severally liable for all amounts revealed as due and owing pursuant to the Counts I through III of the Funds' Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Funds and against Defendant Amatore Dinatale jointly and severally for all amounts due to the Funds as sought in Counts I through III, the costs of any additional damages sustained by the Funds as a result of the fraudulent misrepresentations, and any other legal and equitable relief as the Court deems just and appropriate.

**COUNT V**
**(Fraud - Carmela Marsico)**

50. Plaintiffs Funds re-allege paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51. The Court has supplemental jurisdiction over this cause of action pursuant to 28 U.S.C. §1367(a).

52. At all relevant times, Marsico was a shareholder and owner of NINETTA and was simultaneously employed by NINETTA and the Company.

53. Marsico knowingly participated in Dinatale's scheme to defraud the Funds by forming and serving as the figurehead of NINETTA which Marsico knew was being used by the Company and Dinatale as a vehicle to evade the Company's fringe benefit and union dues contribution obligations under the Agreement.

54. During the Audit Period, Marsico actively participated in this fraud scheme by working in concert with the Company and Dinatale. One part of this scheme involved the Company's underpayment of overtime hours and fringe benefit and union dues contributions and was carried out as follows. In the event a Company laborer employee reached forty (40) hours in a given week, any overtime hours he/she worked for the Company would be paid by Marsico through her company NINETTA. However, Marsico, would pay the hours at straight time and not the overtime rate as set forth in the Company's Agreement with the Union. Furthermore, neither the Company nor NINETTA would pay the corresponding fringe benefit and union dues contributions on these hours.

55. Marsico had knowledge that individuals performing work defined as covered under the terms of the collective bargaining agreement between the Company and the Union were not being paid the appropriate wages and were not having the appropriate benefit contributions reported and submitted on their behalf by the Company and that NINETTA was being used as a vehicle to evade the Company's obligations.

56. The Funds relied to their detriment on the false reports submitted by the Company. Specifically, if the Funds had been aware that the Company had failed to pay and report the proper wages, dues and benefit contributions for work performed on the Company's

projects, the Funds, through the Union, would have taken all lawful steps permitted under the Agreements including, but not limited to, taking job actions against the Company and filing the appropriate lawsuit. Further, if the Funds had been aware of the underpayment of wages, dues and benefit contributions, the Funds would have been precluded from crediting hours for the incomplete reports submitted by the Company and would have commenced the appropriate lawsuit at an earlier date. Thus, by actively participating in and enabling the Company to funnel its payroll through NINETTA, Marsico actions allowed the Company to continue to operate resulting in a benefit to Marsico (who was also employed by the Company) and increasing the liabilities owed by the Company and NINETTA to the Funds.

57. The Funds and the plan participants have suffered harm as a direct result of the false benefit and dues reports submitted on behalf of the Company. Specifically, the Funds have incurred unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and attorneys' fees and expenses. The Funds have also provided benefit coverage to individuals based on the submission of the incomplete and false reports. Said coverage would not have been provided had the Funds been aware that the reports were false and incomplete. As a result of the systematic under-reporting, individuals may have received eligibility based on less hours than actually worked, future welfare contribution rates may be impacted, the Pension Fund may be required to provide benefits to participants for which no contributions have been received, and in the event that the Funds are unable to obtain full recovery of all amounts due from the Company and NINETTA, the Funds may become under-funded.

58. Marsico personally benefited from the submission of false reports submitted by the Company to the Funds enabling the Company to continue operations and obtain financial gain including the payment of wages and/or bonuses to Marsico as a result of the continued

operation of the Company. Thus, Marsico obtained a direct financial gain as a result of the submission of false benefit and dues reports to the Funds.

59. Marsico is personally liable for any unpaid benefit contributions, dues, interest, liquidated damages, audit costs, and wages owed by the Company and NINETTA to the Funds and should be found jointly and severally liable for all amounts revealed as due and owing pursuant to the Counts I through III of the Funds' Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Funds and against Defendant Carmela Marsico jointly and severally for all amounts due to the Funds as sought in Counts I through III, the costs of any additional damages sustained by the Funds as a result of the fraudulent misrepresentations, and any other legal and equitable relief as the Court deems just and appropriate.

November 14, 2019

Respectfully submitted,

Laborers' Pension Fund, et al.

By: /s/ G. Ryan Liska

G. Ryan Liska
Office of Fund Counsel
111 West Jackson Boulevard
Suite 1415
Chicago, Illinois 60604
(312) 692-1540